# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

KENDRA BAILEY,                )
                               )
            Plaintiff,     )
        v.                  )  Civil Action
                               )  No. 03-3446-CV-S-JCE
FARMERS NEW WORLD LIFE    )
INSURANCE CO.,             )
                               )
                               )
            Defendant.    )

## ORDER AND JUDGMENT

      This case is before the Court pursuant to 28 U.S.C. § 1332, having been removed from state court. Plaintiff claims in Count I that defendant breached an insurance contract by failing to pay the coverage on a life insurance policy issued on her husband. In Count II, she alleges a vexatious refusal to pay on the policy. She asserts that the policy was issued; that it was in place at the time of her husband's death; that, by its terms, it provided for $100,000 death benefit; that she is the beneficiary on the policy; that demand was made for payment; and that the demand was refused. The case was tried before the undersigned on May 9, 2005.

      The following relevant testimony was adduced at the hearing. Plaintiff Kendra Bailey and her husband Thomas purchased life insurance from defendant on June 26, 2002. Each was the beneficiary for the policy of the other. Ms. Bailey testified that when the original policies were obtained they went to one of defendant's local offices. The agent there, Phil Yount, read them the questions from the application for insurance, and he marked the answers for them. Thomas Bailey submitted to a medical examination in connection with the application for the policy. Defendant issued its Life Insurance Policy Number 006892851 on the life of Thomas Bailey on August 28, 2002. The death benefit set forth under the policy was $100,000.00. The policy lapsed due to nonpayment of premiums in November of 2002. Plaintiff stated that she had lost her job, and various bills went unpaid for a period of time. After she started working again, she testified that she

and her husband decided to reinstate the policy.

Kendra Bailey testified that she called Danelle Blansit, defendant's employee, regarding reinstating the policy, and asked how much money she needed to accomplish that. Ms. Blansit told her to bring the money and come to the office where they had originally gone to apply. Plaintiff went to defendant's office on February 20, 2003, to reinstate the policy. Only she and Ms. Blansit were present. Thomas Bailey, who was a plumber and a welder, was out of town working, and therefore, did not go with her. She did not remember where he was working that day. Plaintiff stated that she and her husband discussed that she would apply for reinstatement, and that he told her to do this. This was a decision they had made together because they were concerned and wanted to get their bills caught up. When plaintiff filled out the application for reinstatement for her husband's policy, she signed her husband's name on the application. It was her testimony that Danelle Blansit told her she could sign it. Plaintiff testified that she did not date the reinstatement application, and did not know who placed the date of February 21, 2003, on it. On the form that she filled out, she answered a series of questions under "Health Statement." These questions required "yes" or "no" answers. [Tr. 25]. It was plaintiff's testimony that she sat at Ms. Blansit's desk as she filled out the form, and that Ms. Blansit told her that she didn't see why she couldn't fill out her husband's form. Specifically, plaintiff testified that she asked Ms. Blansit "if it were okay, if I could fill my husband's out. I already filled mine out. She said, 'I don't see why not. You are his wife.'" [Tr. 26-27]. She testified that, although she had cash with her, Ms. Blansit told her she needed a money order, which she went out and purchased, and then returned to the office with the payment.

On April 8, 2003, defendant mailed a letter to Thomas Bailey, which notified him that his policy had been reinstated. Thomas Bailey was diagnosed with cancer on April 11, 2003, and died on May 19, 2003. Plaintiff called Ms. Blansit to advise her of Thomas Bailey's death. She received the form for request for payment on the policy in the mail. On May 30, 2003, plaintiff mailed the request for payment of death benefits under her husband's policy. On October 17, 2003, plaintiff received a letter of denial of her claim.

On cross examination, plaintiff stated that she had also purchased other forms of insurance from defendant, including auto policies and a homeowner's policy. She acknowledged that she had let those policies lapse. She admitted that her husband had been ill for one day, and had been in the emergency room a few hours on the evening of February 5, 2003. While there, he had a chest x-ray, and was told that he needed to see his regular doctor. Plaintiff denied that she was told at that time that there was a cloud or something on the x-ray. Thomas Bailey had an x-ray at his doctor's office on February 13, 2003, when he saw the doctor for a pneumonia follow-up. She testified that his chest pain was gone, and he was just having another x-ray to see if the pneumonia was gone. She acknowledged that that x-ray caused Dr. Reed to order a CT scan. Plaintiff testified that the doctor just thought the x-ray showed fluid on his lung or pneumonia.

Plaintiff reiterated her testimony that Ms. Blansit told her it was all right for her to sign Thomas Bailey's name. Plaintiff acknowledged that her husband was home sometime the evening of February 20, and that she could have taken the application home for him to sign. She stated that she did not do so because Ms. Blansit told her she could do it at the office.

Regarding the health questions on the application, plaintiff admitted that question 1 asked "Has the insured ever sought medical advice, been treated or diagnosed as having (F) any disease or disorder of the lungs or respiratory system." [Tr. 37]. Plaintiff answered "no" because she did not figure that pneumonia was a disease and didn't think it was that important for purposes of filling out the questionnaire. She acknowledged that the questionnaire did not allow her to make the decision regarding what was serious or not, "[b]ut when you're doing a life insurance, you're thinking of life and death situations to mark yes or no." [Tr. 37-38]. She also admitted that the question required a yes or no answer. Question 5(B) asked whether the insured had been advised to have an x-ray, blood test, mammogram study, or electrocardiogram during the past five years. She answered "no," even though her husband had had two x-rays and a CT scan within the past two weeks. Question 5(C) asked whether the insured had seen a physician, been under observation, care, or treatment in any hospital or treatment facility within the past five years, and plaintiff admitted

she also answered "no." [Tr. 39]. This was despite the fact that her husband had been treated in the emergency room at Cox Hospital, had been seen by Dr. Reed, and had a CT scan done at the hospital. She stated that with regard to the application for reinstatement, on the Health Statement portion, she was telling the truth.

It was plaintiff's testimony that on the front page of the reinstatement policy, it said "Insured's signature," and she signed the name "Thomas Bailey." [Tr. 39]. On the second page, there were two signature blocks, and she acknowledged that she signed her husband's name. She did not sign it "Thomas Bailey by Kendra Bailey" or "Kendra Bailey for Thomas Bailey." [Tr. 40]. Plaintiff reiterated that she signed like this because of her conversation with Danelle Blansit.

When questioned about the statement for insurance proceeds, which plaintiff filled out after her husband's death, she testified that she answered "no" to whether he had been in the hospital within the last 12 months, and "no" to whether he took prescription medication. [Tr. 48]. She stated that she made a mistake on this question because it was a week after her husband had died and she wasn't thinking clearly. She admitted that she also stated that he did not have a lung or liver disease, even though he had Hepatitis C. Plaintiff stated that there were no other witnesses when she filled out the policy in front of Ms. Blansit. She stated that it was her opinion that Ms. Blansit was not being truthful when she denied that she told plaintiff she could sign the form for her husband.

Plaintiff was questioned about the letter she received from defendant on October 17, 2003, which denied her claim. The claim evaluation indicated that Thomas Bailey had had hepatitis for about 20 years. It also indicated that the x-ray "showed no typical confluent pneumonia, but there was a vague opacity in the right upper lobe." [Tr. 41]. Plaintiff testified, however, that the doctor told her he had pneumonia. She acknowledged that the evaluation indicated that because of the preceding health history, Questions 1 (F), 3 (D), 4, 5 (B), and 5 (C) should have been answered "yes." [Tr. 43].

On redirect examination, plaintiff testified that the questions about liver disease referred to the last five years, and her husband did not get the diagnosis of Hepatitis C, take medication, or

receive care for it within that time frame. Further, he had not been diagnosed or received treatment within the last ten years for the Hepatitis C. It was her testimony that she had marked "no" on some of the questions because she believed they were referring to a life-threatening condition. She stated that her husband had not received medical care for a cough prior to February of 2003. Her husband was working every day and seemed fine after the pneumonia. At the time she filled out the application for reinstatement, she had not heard anything from any medical care provider regarding cancer, nor did she have any indication that her husband faced a life-threatening situation. She did not believe that the diagnosis of pneumonia put his life at risk, and she knew that his chest pains had gone away after he went to the emergency room.

Regarding filling out the application for reinstatement, it was plaintiff's testimony that the only reason that she filled out and signed it was based on what Ms. Blansit told her she could do. She had discussed with her husband prior to going to the insurance office that she was going to fill out the forms, if possible. She had his permission to fill out the forms on his behalf. Further, she discussed with him after she had done so that she had, in fact, filled out the form. It was also her testimony that she had all the information her husband had regarding the visit to the emergency room and the findings from the subsequent CT scan. In fact, she received the results of the CT scan over the telephone.

Plaintiff's daughter, Ashley Stiles, testified that she went with her mother on February 20 to defendant's office. She did not go inside. It was her testimony that her mother was going there to reinstate her insurance. She saw her mother take cash into defendant's office, and come back out with the cash. She did not have any documents with her when she came out. Plaintiff told her daughter that the insurance company would not accept cash, and they had to get a money order. After having done so, her mother went back into the office. When she returned, she had no application or other documents with her. It was Ms. Stiles' testimony that she had daily contact with her mother and step-father during this time period. She stated that Thomas Bailey was working in February and March, and had a normal life style. She was with them when they went to the

emergency room and Thomas Bailey was diagnosed with pneumonia. Ms. Stiles never saw him appear to be ill and did not learn that he was until she found out he had brain tumors.

At the close of plaintiff's case, defendant moved for a directed verdict on the basis that there is no proof of agency, "either by Kendra Bailey to act on behalf of her husband; there is no proof of the apparent agency of Danelle Blansit." [Tr. 67]. Defendant asserts that plaintiff's contention that she acted as her husband's agent is insufficient to prove the "act of agency." [Tr. 68]. It is further asserted that there was no proof regarding Ms. Blansit's authority, including no indicia of what her job title or duties were. Defendant asserts that "there is no ability to have this type of agency with regard to a life insurance reinstatement," [Tr. 69], and that plaintiff has cited no cases with a similar factual scenario involving a wife.

In response, plaintiff argues that there was the evidence from Kendra Bailey that she discussed filling out the form on his behalf with her husband, that she had his permission to do so, and that she told him afterwards. She contends that he raised no objection, and she had his permission, which she claims is "evidence of express authority, number one." [Tr. 69]. Secondly, plaintiff contends that defendant waived this defense by not asserting it in their declination of payment. Finally, she contends that even assuming that defendant was correct regarding a lack of authority, plaintiff had statutory authority to purchase insurance on her husband's behalf in her own name. Therefore, on these three grounds, plaintiff asserted that the motion for directed verdict should be denied.

Defendant then asserted that to the extent that the issue of waiving defenses was raised, it would move to amend the pleadings to conform to the evidence. Defendant stated that it wasn't until the time that Danelle Blansit's deposition was being taken that plaintiff indicated that she signed the reinstatement application, and that it was simply unaware of this until that time. Additionally, defendant maintained that the case relied upon by plaintiff regarding a waiver of defenses is inapplicable to this case. It was defendant's contention that the statute entitling a wife to have an insurable interest for her husband, in which she may purchase the policy in her own

name, is not applicable to this case. In such a case, the wife would be the owner and the husband would not necessarily have to fill out a health statement. Finally, defendant asserts that even if the policy were not found to be void, plaintiff failed to disclose health conditions that are material to the issuance of the policy.

Regarding the motion for directed verdict at the close of plaintiff's case, it was the finding of the undersigned that, in construing the evidence most favorably to plaintiff, as the law requires at this stage of the proceedings, the case would be allowed to proceed. The Court held: "The Plaintiff testified with regard to her apparent authority, her authority on behalf of her husband. She testified that Ms. Blansit told her that she could sign it. She testified that she then secured a method of payment that was satisfactory to Ms. Blansit. Ms. Blansit accepted that payment. There's no question that after that was done, a reinstatement was issued. I think for purposes of proceeding with the case, there's sufficient evidence in that regard with agency as well as authority. And on that basis, I'm going to allow the case to proceed, and the Defendant may proceed." [Tr. 72].

Defendant then called Danelle Blansit to the witness stand. Ms. Blansit had previously worked for Troy Jones, a district manager for Farmers Insurance, and is now employed by Nixa Public Schools. Ms. Blansit testified that plaintiff came to their office, and she gave her the reinstatement application. She categorically denied that she told plaintiff she could sign her husband's name. Rather, she testified that she told plaintiff she could take the application with her and sign it. She denied that plaintiff asked if she could sign it. Plaintiff took the application with her, and returned with it signed the next day. It was her further testimony that plaintiff did not sign it or fill it out in front of her. She specifically denied that plaintiff sat at her desk and filled out the application in front of her.

Ms. Blansit stated on cross examination that she thought the application was filled out on February 19th. When it was given to her, it was signed but not dated. She admitted on cross examination that the form was not dated when it was returned to her. She thought plaintiff dated it the 21st. At some point, plaintiff came back to her office, and she received money for an additional

premium from her at that time. She confirmed that plaintiff first offered cash for the premium, that she declined the cash, and that she told plaintiff she needed a cashier's check or money order. Ms. Blansit testified that plaintiff left and when she returned, she brought a money order. On whatever day this occurred, plaintiff turned in the application when she brought in the money order.

Troy Jones also testified for defendant. He stated that he is a district manager for Farmers Insurance Group. Danelle Blansit had worked for him. She left that position because she was offered a job with the Nixa School system for the same pay, but with summers off. Mr. Jones testified that he offered Danelle Blansit a raise to stay, but she wanted the summers off. Regarding dealing with insurance applications, he testified that she was instructed to follow the rules that "any company has with regard to dealing with applications." [Tr. 79]. It was Mr. Jones testimony that she could not waive any of those rules. Plaintiff and her husband were multi-policy customers of his agency. They had auto insurance which lapsed in August of 2002, and which was reinstated by plaintiff in May of 2003.

At the close of the case, plaintiff's counsel filed a motion for judgment as a matter of law, based upon the provisions of Mo. Rev. Stat. § 376.610.This section provides that if an insurer relies on the defense of misrepresentation, it has the burden to present evidence that the premiums paid have been deposited with the Court at or during the trial. It is plaintiff's position that this provision precludes defendant from relying on the defense of misrepresentation. Defendant filed suggestions in opposition to that motion, contending that the provisions of § 376.610 are waived by a plaintiff if the defendant offers the defense of misrepresentation at trial without objection by the plaintiff, in reliance on Poignee v. Monumental Life Insurance Co., 157 S.W.2d 531, 532 (Mo. App. 1942). Because plaintiff did not object to defendant's offer and introduction of evidence regarding misrepresentation at trial, defendant contends that plaintiff has waived this contention. Further, defendant asserts that the defense of misrepresentation does not come into play with regard to its assertion that plaintiff's signing her husband's signature to the Application for Reinstatement made that application void ab initio because the signing of her husband's signature did not create a

contract between plaintiff and defendant.

The Court finds, initially, that because of the decision rendered herein, it is not necessary to reach the issue of whether § 376.610 applies to this case. It should be noted, however, that case law indicates that the provisions of this section are waived where a defense is made without plaintiff's objection, and it is suggested that the issue must be raised prior to the conclusion of the insurer's case-in-chief. Sheehan v. Northwestern Mutual Life Insurance Co. 103 S.W.3d 121 (Mo. App. 2002). This did not occur in the instant case.

According to defendant, its initial defense in this case is that there is no enforceable life insurance policy due to the material misstatements contained in the initial application for insurance, as well as in the application for reinstatement. After defendant discovered that plaintiff filled out and signed her husband's name to the application for reinstatement of Thomas Bailey's insurance, it asserted that the application for reinstatement of the insurance policy in this case is void because it was not completed and signed by Thomas Bailey, the insured. Therefore, defendant asserts that the reinstatement contract is void, and that the Court should award judgment in its favor.

The Court has reviewed the testimony and pleadings in this case, as well as relevant statutory and case law. It is the Court's opinion that its ruling depends on the following issues: Whether defendant has met its burden of proving that the misrepresentations made in the application for insurance or the application for reinstatement of the policy were material, and whether defendant relied on those misrepresentations to issue or reissue the life insurance policy; whether plaintiff acted at the direction of Danelle Blansit in filling out the reinstatement application and signing Thomas Bailey's name to it; and whether the reinstatement contract is void because plaintiff filled out the application and signed her husband's signature on it without the authority to do so.

The first question that Court addresses is whether defendant has met its burden of establishing the necessary elements of its affirmative defense. Defendant contends that it was fraudulently induced to issue or reinstate the policy by Thomas Bailey's statements on the

application form and by plaintiff's answers on the "Health Statement" portion of the application for reinstatement.

Generally, an insurance company may avoid an insurance policy for a fraudulent misrepresentation or a material misrepresentation in the application. Continental Cas. Co. v. Maxwell, 799 S.W.2d 882, 887-88, (Mo.App. 1990). To prove a material misrepresentation, the insurer must demonstrate that the representation in the application was material and false when (1) the representation was warranted to be true, (2) the policy was conditioned upon its truth, (3) the policy provided that its falsity will avoid the policy, or (4) the application was incorporated into and attached to the policy. Id.; see also Cent. Bank of Lake of the Ozarks v. First Marine Ins. Co., 975 S.W.2d 222, 225 (Mo.App. 1998); Shirkey v. Guarantee Trust Life & Ins. Co., 141 S.W.3d 62, 67 (Mo. App. 2004). A misrepresentation of fact is deemed material if the fact, stated truthfully, might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium. Id. at 889; Farley v. St. Charles Ins. Agency, Inc., 807 S.W.2d 168, 170 (Mo. App. 1991). In the case of obtaining life insurance, however, misrepresentations are not deemed material or render the policy void "unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury." Mo. Rev. Stat. § 376.580. Central Bank of Lake of the Ozarks v. First Marine Ins. Co., 975 S.W.2d 222, 225 (Mo. App. 1998). This statutory provision applies to an application for reinstatement of life insurance. DeValpine v. New York Life Ins. Co., 105 S.W.2d 977, 979 (Mo. App. 1937).

It is plaintiff's position that the operation of § 376.580 renders any of the false information, or misstatements regarding the health of Thomas Bailey, to be immaterial. "Missouri law requires that the matter misrepresented in an application for life insurance must have 'actually contributed' to the insured's cause of death to be deemed material and to thus render the policy void." Derickson v. Fidelity Life Ass'n, 77 F.3d 263, 264 (8th Cir. 1996); §

376.580. The causation issue is a question for the trier of fact, but the Court must determine "whether the evidence authorizes submission of the case to the jury." 77 F.3d at 264.

In this case, defendant presented no evidence on the issue of Thomas Bailey's medical condition, other than the application for insurance that was filled out by Thomas Bailey, the reinstatement application, filled out by plaintiff, and the letter in which defendant denied coverage. The Court finds that this lack of evidence is an insurmountable obstacle to defendant meeting its burden of proof that it relied to its detriment on material misrepresentations made by plaintiff, i.e., representations that actually contributed to Thomas Bailey's cause of death, sufficient to render the policy void. Derickson, 77 F.3d at 264; § 376.580. Defendant introduced none of Thomas Bailey's medical records by which to even ascertain his health condition at any relevant period of time, including the time the insurance policy was issued, the time it was reinstated, and the time of death. Further, there was no expert testimony from a medical expert, either plaintiff's physician or a medical expert hired by defendant. There was no evidence introduced regarding Thomas Bailey's cause of death. There was no testimony from any of defendant's employees or agents regarding a review of the applications for insurance or reinstatement. Additionally, there was no testimony from anyone who was involved in the decision to reject plaintiff's claim under the policy. Defendant produced no oral testimony, no documentary evidence, and in sum, no supporting evidence. Therefore, there is nothing upon which to rely to determine if there was a causal connection between either hepatitis C or pneumonia, which actually contributed to his death. Based on the lack of evidence produced by defendant, there is nothing upon which to rely to determine if plaintiff made any material misrepresentations under the law of Missouri. The letter declining payment on the policy states that "our medical department has confirmed a causal relationship between these undisclosed medical conditions [hepatitis C and pneumonia] and the ultimate diagnosis of lung cancer that resulted in Mr. Bailey's death." Plaintiff's Exhibit 14, at 2]. This conclusory statement is not enough to carry the insurer's burden. See Continental Cas. Co., 799 S.W. 2d at 887-88. There is

nothing upon which the Court can rely to render a decision except what defendant stated in the denial letter, which is inadequate. It would be speculative for the Court to decide the issue of material misrepresentation without the benefit of expert testimony, testimony from defendant's representative who denied the claim, from the company's underwriters, or from some source other than that which was produced in this case. Clearly, defendant has wholly failed to meet its burden to establish that any of the alleged misrepresentations were material, and has failed to establish that it relied on any alleged misrepresentations. Derickson, 77 F.3d at 264; § 376.580; Cf., Brinkoetter v. Pyramid Life Insurance Co., 377 S.W.2d 560, 563 (Mo. App. 1964)(in ruling in favor of insurance company, defendant adduced evidence that it relied upon plaintiff's quoted answers to its detriment and that it would not have issued the policy if plaintiff had answered truthfully).

For whatever reason, defendant failed to present any evidence in this case on the issue of whether plaintiff made material misrepresentations that would render this policy void, and failed to meet its burden of proving this defense. Therefore, had the evidence established that the policy was otherwise valid, a ruling would have to be in plaintiff's favor. That is not the case, however, because after careful review of the testimony in this case, as well a copious review of Missouri law, the Court finds that the reinstatement policy was void because of plaintiff's actions in filling out and signing Thomas Bailey's name to the policy without the authority to do so.

As a preliminary matter, plaintiff contends that defendant waived all other defenses to the claim because it denied liability on the policy on the basis of Thomas Bailey's history of Hepatitis C. Missouri law indicates that, once having denied coverage on a specified ground, an insurance company may not later deny coverage on a different ground, provided that the original denial was made with full knowledge of the facts. Kammeyer v. Concordia Tel. Co.,446 S.W.2d 486, 490 (Mo. App. 1969). In this case, the record establishes that defendant did not have full knowledge of all the facts at the time it initially denied coverage. Specifically, the record

indicates that defendant did not have knowledge that plaintiff signed the reinstatement application for her husband until the issue was raised in Plaintiff's Motions in Limine, filed April 4, 2005. Specifically, in that motion, in paragraph 7, plaintiff asserts that "Defendants should be barred from making any reference to or offering any evidence regarding any alleged misrepresentation or failure to disclose material information by Thomas Bailey in that the uncontroverted evidence will be that Thomas Bailey did not complete the application for reinstatement of insurance, but rather, said application was completed by the plaintiff." [Plaintiff's Motions in Limine, at 3]. In response to this motion, defendant stated that paragraph 7 was an admission against interest by plaintiff that the reinstatement application purportedly submitted by Thomas Bailey is invalid because it must have been completed by the insured. "This statement is a complete surprise to the Defendant, and is entirely inconsistent with the prior position of the Plaintiff." [Defendant's Response to Plaintiff's Motions in Limine]. Based on the foregoing, the Court finds that defendant is not barred from its additional denial on the basis that Thomas Bailey did not sign the reinstatement application. Further, the Court has reviewed the declination letter, which clearly states that defendant reserves "its right to raise any other defense of which we may become aware in the future and nothing contained herein should be deemed a waive of any such defense." [Plaintiff's Exhibit 14]. Accordingly, the rule of law set forth in Delmar Bank v. Fidelity & Dep. Co. of Md., 428 F.2d 32, 35 (8th Cir. 1970), upon which plaintiff relies, does not apply.

Plaintiff's theory of recovery rests of two premises: that she acted at the direction of defendant's agent, Danelle Blansit; and that she acted with Thomas Bailey's approval and consent. The law is clear that plaintiff has the burden of proving the agent's authority. Dickinson v. Bankers Life and Casualty Co., 283 S.W.2d 658, 662 (Mo. App. 1955); Philp v. Minnesota Mut. Life Ins. Co., 657 S.W.2d 679, 682 (Mo. App. 1983). A plaintiff who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority. Philp, 657 S.W.2d at 682.

Plaintiff asserts that she acted at the direction of Danelle Blansit, who was defendant's agent, in filling out the reinstatement application, and that she signed his name at the direction of and with the approval of defendant's agent. Plaintiff also asserts that she reapplied for the life insurance policy on her husband with his full knowledge and consent. Her daughter supports her testimony that the reason they went to defendant's office was to reinstate the policy. Her story is consistent with her mother's to the extent that she claims that plaintiff entered the office with cash, came out with cash, left, and then obtained a money order to pay for the premium for the policy to be reinstated. She also was consistent with her mother regarding her assertion that she did not exit the building with the application or any other documents. Otherwise, she was not in the building, and could not testify regarding what transpired between her mother and Ms. Blansit.

Danelle Blansit categorically denies she ever told plaintiff she could sign her husband's name, she denies that she told her she could fill out the application herself, and she denies that plaintiff performed these tasks at her desk and in front of her. Rather, she testified that she told plaintiff she could take the application with her and sign it. She denied that plaintiff asked if she could sign it, and stated that plaintiff returned with it signed the next day. She confirmed that plaintiff first offered cash for the premium, that she declined the cash, and that she told plaintiff she needed a money order. Ms. Blansit testified that plaintiff turned in the application the same day she brought in the money order.

On the issue of Ms. Blansit being an agent for defendant, plaintiff has presented no evidence that Ms. Blansit acted as defendant's agent. There was no testimony adduced at the trial that even established Ms. Blansit's position with defendant, much less the extent of her authority to act on defendant's behalf. The fact that Ms. Blansit was in a position to accept the premium payment and the application for reinstatement does not, without more, establish that she had the authority to grant plaintiff permission to fill out the application and sign her husband's name to it. There is nothing to establish Ms. Blansit's authority to make

representations regarding plaintiff being allowed to sign for her husband. Therefore, the Court finds, as a matter of law, that plaintiff has failed to meet her burden to prove that Ms. Blansit had the authority to act as defendant's agent.

In this case, the Court is presented with a difficult situation, in which there are two wholly divergent renditions of what occurred between Ms. Blansit and plaintiff. As a finder of fact, the trial court has the responsibility to assess the credibility of witnesses and to make credibility determinations. The Court is free to believe, none, part, or all of a witness's testimony. E.g., Gillham v. LaRue, 136 S.W.3d 852, 863 (Mo.App. 2004); Nace v. Director of Revenue, 123 S.W.3d 252, 258 (Mo.App. 2003). Even if plaintiff had produced some evidence to support her theory that Ms. Blansit had the authority to direct plaintiff's actions as alleged, the Court is faced with a credibility issue in this case. Plaintiff's credibility is impaired by the fact, initially, that she admitted on the witness stand that she did not answer certain questions on the reinstatement application truthfully. In an attempt to explain her actions, she testified that she construed some of the questions to require a positive response only if her husband had a life-threatening condition. It is apparent, however, that several of the questions did not require a judgment call, even assuming that this would have been an appropriate undertaking for her to have assumed. For example, whether the applicant had been treated by a physician, had been in a hospital, or had been directed to have x-rays within the past five years required nothing more than a simple "yes" or "no" answer. Additionally, the Court cannot ignore the fact that plaintiff has a significant interest in the outcome of the case, and arguably, so does her daughter. Ms. Blansit, who is no longer even employed by defendant, appeared to be a neutral witness.

Based on a full review of the record, the Court finds that plaintiff did not prove herself to be altogether truthful at trial, and on balance, her version of what transpired cannot be accepted as true. Ms. Blansit, with little apparent interest in the outcome of this case, provided testimony that was wholly contradictory to that of plaintiff and Ms. Stiles. Having observed the witnesses at trial, and being in a position to accept or reject testimony that appears credible or not, the

Court finds that the evidence supports a finding that plaintiff did not act at the direction of Ms. Blansit, a person without bias and with nothing to gain or lose from her statements at trial. The Court finds, after carefully weighing each witness's testimony and the inclination or disinclination of that individual to tell the truth, that plaintiff's testimony that she acted at the direction of Ms. Blansit is less believable than Ms. Blansit's account of what occurred. The Court believes that plaintiff acted on her own accord in filling out and signing the reinstatement application, and not at the direction of Ms. Blansit.

Turning to the issue of plaintiff's authority to have signed for her husband, defendant argues that the policy of reinstatement is void in this case because plaintiff filled out the application for reinstatement and signed her husband's name in the two blanks on that form requesting the signature of the insured. It contends that the insurance contract was between Thomas Bailey and defendant, and that the application for reinstatement had to be completed and signed by Thomas Bailey. Defendant asserts that, without a power of attorney or an agency agreement executed by Thomas Bailey, plaintiff could not fill out and execute her husband's signature on the application for reinstatement. Therefore, defendant concludes that the application for reinstatement is void, and that the it should therefore be awarded judgment.

Defendant provides no support for its conclusion that the law requires that plaintiff had a power of attorney or an agency agreement executed by her husband in order to have filled out and executed her husband's signature on the application for reinstatement, and the Court has found no case or statutory law to support this conclusion.

It is plaintiff's contention that plaintiff's actions are consistent with agency because plaintiff and her husband have previously procured life insurance policies, in which both named the other as the primary beneficiary; that defendant advised Thomas Bailey of the reinstatement on April 8, 2003, and he had the opportunity to object to it, but did not do so; that there was evidence that plaintiff caught up on other bills when she regained employment; and that the nature of the transaction of purchasing identical life insurance policies demonstrates mutual

benefit and obligation.  Therefore, plaintiff seeks judgment in her favor.

In Missouri, the law is clear  that there is no agency merely because of the marital relationship and neither spouse is empowered to act as the agent for the other simply because they are married. Dickey Co. v. Kanan, 537 S.W.2d 430, 434 (Mo.App. 1976); Fuller v. Lloyd,714 S.W.2d 698, 701 (Mo.App. 1986).  "Spouses are not generally agents and principals for each other."  Cohn v. Dwyer, 959 S.W.2d 839, 843 (Mo. App. 1997).  It has been established, however, that the apparent authority to act on the other's behalf may be shown by direct evidence or if the facts and circumstances surrounding the transaction give rise to a reasonable and logical inference that the non-acting spouse empowered the acting spouse to act for her or that he ratified her unauthorized acts. Ethridge v. Perryman, 363 S.W.2d 696, 701 (Mo. 1963); Cohn, 959 S.W.2d at 843. The fact that one spouse customarily allows the other to handle the couple's business transactions is strong evidence that such an inference exists.  Holtmeier v. Dayani, 862 S.W.2d 391, 403 (Mo. App. 1993).   Therefore, the actions of one spouse will bind the other if the non-acting spouse cloaked the acting spouse with apparent authority to act on his behalf, or if the non-acting spouse later ratifies the agreement.

Although the Court has found no case law that is directly on point, there are several Missouri cases that deal with a somewhat similar situation as the one presented herein.  In  Sells v. Fireside Life Ass'n, 66 S.W.2d 955, 956 (Mo. App. 1933), a wife procured an insurance policy on her husband's life, signing his name to the application.  The agent was present at the signing, however, the agent advised the wife that she could do this, and the agent contacted the husband to ensure that he wanted the insurance.  On these bases, the Court upheld the policy, finding that it was not void.   In Byrne v. Prudential Ins. Co. of America, 88 S.W.2d 344, 346-47 (Mo. 1935), the insured's half-sister procured insurance for her brother, signing his name, in the presence of the agent.  It was never shown that the insured knew about or consented to the issuance of the policy, or had any knowledge of it.  The Court held that, without any evidence to show that the insured consented to the taking of insurance or had knowledge of it, subsequent to

making the application or issuing the policy and either specifically or impliedly ratified it, the contract would be void as a matter of law for failure of the applicant to have personally signed his name to the application. Id. at 346. In this case, however, the evidence established that the agent told plaintiff she could sign the policy for her brother. Further, the Court relied on the fact that there was no evidence of bad faith on the part of plaintiff in finding that the policy was not void. Of particular interest in the Byrne case is that the Court noted that the insurance company did not claim that the statements contained in the application were untrue, the contents of the application were not involved, and there were no claims that there were misrepresentations that would affect liability or the acceptance of the application. The Court refused to find the policy void simply because the applicant did not perform the physical act of signing his name the insurance policy. 88 S.W.2d at 347-49. In Magers v. Western and Southern Life Ins. Co., 344 S.W.2d 312, 314 (Mo. App. 1961), insurance policies were found to be void where the evidence established that the plaintiff's nephews, the insureds, did not sign the application for insurance, did not authorize the plaintiff to do so, and did not know the policies had been issued.

The question of whether plaintiff had her husband's consent or he had knowledge of her actions is a question of fact. Sells 66 S.W.2d at 956. If the evidence were to conclusively show that she acted without his consent or knowledge, the Court would be constrained to find the policy void as a matter of law. Id.

Additionally, Mo. Rev. Stat. § 376.531 provides that "No life insurance contract upon an individual . . . shall be made or effectuated unless at the time of the making of the contract the individual insured . . . applies therefor or has consented thereto in writing," with several exceptions. This provision has been construed to codify the common law requirement that the consent of the insured is necessary to the issuance of a policy of life insurance, and that a policy issued in contravention of this doctrine is void. [30 Missouri Practice Digest, § 13.7]. Unfortunately for purposes of this case, the only case to have referred to this provision is factually distinguishable from the instant case in that the issue involved whether a life insurance

policy could be contracted by creditors to secure a debt. <u>Lowe v. Rennert,</u> 869 S.W.2d 199
(1993).

In this case, plaintiff claims that her husband authorized her to reinstate his life insurance,
to sign his signature, and that he knew and approved of her doing this. Unfortunately, plaintiff's
testimony on the other issues in this case, such as her story on the actions of Danelle Blansit, as
well as the fact that she did not truthfully answer questions on the health statement portion of the
reinstatement application, seriously diminish her credibility. The only factor that the Court can
discern that would support her statements regarding her husband having authorized her to act as
his agent is the fact that this was a reinstatement of insurance, rather than an initial application
for life insurance.

After careful consideration, the Court finds that it cannot be said that plaintiff acted with
her husband's consent or that he had knowledge of her actions. Plaintiff testified that it was their
intention to renew their lapsed policies after they were financially able to do so. She stated that
she talked to her husband, and he was in agreement with this decision and knew what she was
doing. Because of the credibility problem in this case, there is no basis to believe that this
precise conversation occurred. While the fact that they had mutually obtained life insurance
policies less than a year previously, in which they named each other as the beneficiary, indicates
their intention to undertake a mutual obligation and obtain a mutual benefit at that time, the
evidence does not support a finding that they mutually assumed this obligation again. Plaintiff
made it clear that she was paying the premiums, and other than her blanket assertion that this
arrangement was based on an agreement with her husband, there is nothing to support her
contention. The Court believes that Ms. Blansit was the more credible witness, and it was her
testimony that plaintiff took the application for reinstatement with her on the day she came into
the office to reapply for insurance. She maintains that plaintiff returned with the application and
the payment sometime after that. The application is dated February 21, although neither plaintiff
nor Ms. Blansit knew who dated it. The fact that plaintiff admitted that her husband was home

on the evening of February 20th raises the question of why he did not sign the application himself, had he been inclined to reinstate his insurance. Further, there is nothing to indicate that Thomas Bailey took any action to ratify the reinstatement. All the evidence indicates is that a notice of reinstatement was mailed out on April 8, 2003, three days before plaintiff admits that Thomas Bailey was diagnosed with cancer. There is no evidence that Thomas Bailey ever received the reinstatement notice. It is also important to the Court's decision that in the few cases finding that a contract of insurance was not void, it was noted either that the agent had directed the applicant to sign for the insured and/or there was no evidence of bad faith or claims of misrepresentation. In this case, as previously mentioned, it is the Court's opinion that plaintiff's having answered "no" to questions that required a "yes" answer at the very least suggests lack of veracity on her part. Based on applicable case law, and a common sense assessment of the facts before it, the Court concludes that it cannot be inferred that plaintiff was acting with her husband's knowledge and consent when she reinstated the policy. Thomas Bailey not only did not sign the application for reinstatement, but there is no evidence, either directly or from which it could be inferred, that he authorized the plaintiff to do so, and nothing to establish that he even knew the policy had been reissued. Therefore, the Court finds that the evidence does not support a finding that plaintiff acted with her husband's authority at the time she signed the reinstatement application. It is therefore the finding of the Court that the reinstatement policy is void.

Accordingly, the Court finds that judgment must be entered in defendant's favor.

For the reasons set forth herein, it is

ORDERED, ADJUDGED and DECREED that judgment be entered in favor of defendant.

 /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:    7/15/05